UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TAMMY HAMMOND,  )<br>    *Plaintiff*,  )<br>                      )<br>v.                      )<br>                      )<br>OFFICER KYLE LONG and ANIMAL  )<br>CONTROL OFFICER CARRIE HERB,  )<br>    *Defendants*.  ) | 3:23-CV-318 (SVN)<br><br><br><br><br>March 29, 2024 |

### RULING ON DEFENDANT HERB'S MOTION TO DISMIS

Sarala V. Nagala, United States District Judge.

Plaintiff Tammy Hammond brings suit against Ledyard, Connecticut, Police Officer Kyle Long and Ledyard Animal Control Officer Carrie Herb, alleging violations of her constitutional rights and accompanying state law claims based on a May 2022 incident in which Herb allegedly presented Plaintiff with a wrongfully-issued misdemeanor summons for letting her dog run loose and Long used excessive force against her. Compl., ECF No. 1. Defendant Herb has moved to dismiss all claims brought against her, contending primarily that she owed Plaintiff no duty to intervene in Defendant Long's alleged unreasonable force; that Plaintiff has failed to allege a post-arraignment deprivation of liberty to support a Section 1983 malicious prosecution claim; and that she is entitled to qualified immunity for any alleged constitutional violation and governmental immunity as to Plaintiff's claim for negligent infliction of emotional distress. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Herb's motion to dismiss.

### I.    FACTUAL BACKGROUND

The Court accepts the following allegations in Plaintiff's complaint as true for purposes of deciding Defendant's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On May 1, 2022, Plaintiff was cited for violating Conn. Gen. Stat. § 22-364(a), which forbids, in part, allowing a dog "to roam at large upon the land of another and not under control of the owner or keeper," and Conn. Gen. Stat. § 22-363, which provides that the first offense of someone owning or harboring a dog that is a nuisance "by reason of vicious disposition or excessive barking or other disturbance," shall be an infraction, and any subsequent offense shall be a Class D Misdemeanor. Compl. ¶¶ 10–11.

On May 8, 2022, while Plaintiff was not home, her husband let the family dog out to roam freely. *Id.* ¶¶ 13–16. At approximately 2:00 p.m., Defendant Herb, an Animal Control Officer in the Town of Ledyard, received notice from Plaintiff's neighbor that Plaintiff's dog was on the neighbor's property. *Id.* ¶ 17.

Defendant Herb went to the Hammond residence with Defendant Long to issue a misdemeanor summons to Plaintiff for an alleged second violation of Conn. Gen. Stat. § 22-363. *Id.* ¶ 23. By this point, Plaintiff had returned to the residence. *See id.* ¶ 27. Plaintiff and Mr. Hammond answered the door, and Mr. Hammond went outside to speak with Defendants, while Plaintiff remained inside the residence. *Id.* Mr. Hammond informed Defendants that he had let the dog out of the residence while Plaintiff was at work. *Id.* ¶ 28.

Defendant Herb nonetheless insisted that the summons be given to Plaintiff because "that's who the last ticket went to." *Id.* ¶ 29. Defendants asked Mr. Hammond to have Plaintiff come outside to sign the misdemeanor summons. *Id.* ¶ 30. When Mr. Hammond did as instructed, *id.*, Defendant Long started to follow Mr. Hammond inside the Hammond residence, placing his foot inside the threshold of the door, *id.* ¶ 31. Plaintiff told Defendant Long that he could not enter the residence. *Id.*

Mr. Hammond again requested that the summons be issued in his name, but Defendant Herb refused, indicating that Plaintiff's name was on it. *Id.* ¶ 32. Plaintiff questioned why the summons was being issued in her name even though she was not present at the residence when the dog was loose. *Id.* ¶ 33. Defendant Herb responded: "because it's the second incidence." *Id.* When Plaintiff refused to sign the summons, Defendant Long told her that if she "refuse[d] to sign it then we will have to take you in and arrest you for interfering." *Id.* ¶ 34. Defendant Long remained inside the doorway during the interaction. *Id.* ¶ 35.

Eventually, Plaintiff went outside to acknowledge the misdemeanor summons, but she went back inside without taking the summons. *Id.* ¶ 36. Defendant Long then pursued Plaintiff into the residence, breaking the front door to gain entry and take Plaintiff into custody. *Id.* ¶ 37. Defendant Long grabbed Plaintiff's arm and forced her against the broken door frame, restraining her hands behind her back. *Id.* ¶ 38. Defendant Long removed Plaintiff from the residence with her hands restrained and pushed her down the front step. *Id.* ¶ 39. Plaintiff landed face-first on the front lawn, and Defendant Long landed on top of her with the full force of his body weight on her back. *Id.* ¶¶ 39–40. Defendant Long then secured Plaintiff with handcuffs. *Id.* ¶ 41. At no time during this interaction did Defendant Herb intervene. *Id.* ¶ 42. Plaintiff was arrested, detained, and imprisoned. *Id.* ¶ 56. Ultimately, the prosecution of the charges against Plaintiff terminated in her favor. *Id.* ¶ 58.

Based on these factual allegations, Plaintiff has alleged the following claims against Defendants: (1) a Section 1983 claim for an alleged violation of her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizures, *id.* ¶¶ 53–54; (2) a claim for false arrest/imprisonment, *id.* ¶¶ 56–60; (3) a claim for malicious prosecution, *id.* ¶¶ 61–65; and

(4) a claim for negligent infliction of emotional distress, *id.* ¶¶ 66–70.[1]  Plaintiff seeks damages for injuries and related expenses.  *Id.* ¶¶ 51–52.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678

---

[1] Plaintiff's complaint is not a model of clarity, and she does not specify whether the false arrest/imprisonment and malicious prosecution claims in her second and third causes of action are brought under state or federal law.  With respect to her false arrest claim, the Court assumes it is brought under both federal and state law, as the complaint alleges a violation of her right to be free from an unlawful seizure under the Fourth Amendment in the first cause of action, *see* Compl. ¶ 53, and separately alleges a false arrest claim in the second cause of action, *id.* ¶¶ 55–60.  With respect to her malicious prosecution claim, as Plaintiff argues she has plausibly pleaded the elements of a malicious prosecution claim under Section 1983, the Court assumes she intends to state a Section 1983 malicious prosecution claim as part of her first cause of action, in addition to a state law malicious prosecution claim in her third cause of action.

(quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

Defendant Herb moves to dismiss all counts brought against her. First, she argues that all of Plaintiff's claims fail to state a claim for relief by incorporating her statement of facts by reference under each cause of action, instead of spelling out the specific facts supporting each claim. ECF No. 23-1 at 8. Second, she argues that because she is not a sworn or trained police officer, she had no duty to intervene in Defendant Long's alleged use of force against Plaintiff. *Id.* at 9. Third, she argues that should the Court not dismiss Plaintiff's single federal claim and decline to exercise supplemental jurisdiction over the state law claims, Plaintiff fails to state a claim under any of her state law causes of action. *Id.* at 14.[2] Finally, Defendant Herb argues she is entitled to qualified immunity. *Id.* at 18. For the reasons that follow, the Court grants in part and denies in part Defendant Herb's motion to dismiss.

#### A. Form of Complaint

First, the Court easily disposes of Defendant Herb's argument that Plaintiff's complaint must be dismissed because her causes of action incorporate by reference other factual allegations.

---

[2] As part of this argument, Herb has moved to dismiss Plaintiff's claim for negligent infliction of emotional distress on the ground that she is entitled to governmental immunity for negligent actions. Plaintiff has not opposed Defendant's arguments on this claim. Given Plaintiff's fulsome response to Defendant Herb's other arguments, and given Herb's many pages of argument in favor of dismissing the negligent infliction of emotional distress claim, the Court treats Plaintiff's negligent infliction of emotional distress claim as abandoned as against Defendant Herb. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

There is no question the complaint gives fair notice to Herb of the claims alleged against her.

As the Court has already explained, to survive a motion to dismiss, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Plaintiff has done as much—her statement of facts is replete with specific factual references in support of her claims.  None of the cases cited by Defendant Herb support the proposition that, where a Plaintiff has pleaded specific factual information, that a court must nonetheless dismiss the complaint because the plaintiff has incorporated those facts by reference under each count.  Rather, Defendant Herb's cases involve courts dismissing complaints because the plaintiff's allegations were wholly insufficient. *See, e.g.*, *Moore v. City of New York*, No. 08-CV-2449 (RRM) (LB), 2011 WL 795103, at *7 (E.D.N.Y. Feb. 28, 2011) (finding that plaintiff's "repetitive, speculative, vague, general, and conclusory allegations" could not support a claim for relief); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268–69 (S.D.N.Y. 2010) (finding that plaintiff's complaint was "wholly devoid of factual allegations and d[id] not set forth a plausible cause of action.").  That is not the case here.

Thus, the Court will not dismiss Plaintiff's complaint on this ground.

    B.  <u>Section 1983 Duty to Intervene</u>

Next, the Court holds that Plaintiff can pursue her Section 1983 duty to intervene claim against Defendant Herb for Defendant Long's alleged use of excessive force during his arrest of Plaintiff.  Defendant Herb's argument that she owed Plaintiff no duty to intervene because she is not a sworn police officer fails.

        *1.  Defendant Herb Owed a Duty to Intervene*

Officers "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v.*

*Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  As such, officers can be held liable for failing to intervene if they "observe[] or [have] reason to know . . . that excessive force is being used . . . [and have] a realistic opportunity to intervene to prevent the harm from occurring."  *Id.*

As a threshold matter, the Court rejects Defendant Herb's argument that under Connecticut law, animal control officers do not owe a duty to intervene because they are not sworn police officers.  Connecticut law defines a police officer as "a sworn member of an organized local police department, an appointed constable who performs criminal law enforcement duties . . . or *any member of a law enforcement unit who performs police duties*."  Conn. Gen. Stat. § 7-294a(9) (emphasis added).  Despite Defendant Herb's insistence, whether she was a sworn police officer during the relevant time period is not dispositive.  Rather, there are two inquiries:  (1) whether Herb is a member of a law enforcement unit; and (2) whether she performs police duties in her role as an animal control officer.

The Court finds that Defendant Herb was a member of a law enforcement unit.  Under Connecticut law, a law enforcement unit "means any agency or department of this state or a subdivision or municipality thereof . . . whose primary functions include the enforcement of criminal or traffic laws, the preservation of public order, the protection of life and property, or the prevention, detection or investigation of crime."  Conn. Gen. Stat. § 7-294a(8). The Ledyard Town Charter provides that "the duties of the Municipal Animal Control Officer, as provided in the General Statutes, shall be supervised by [the Department of Public Safety]."  Ledyard Town Charter, Chapter VI, Section 7(B).  The Department of Public Safety, in turn, is responsible for the "functions of Law Enforcement, Fire Safety, Emergency Medical Services, Civil Preparedness, and Emergency Management."  *Id.* Section 7, Preamble.  Because Defendant Herb, as a municipal animal control offer, was supervised by the Ledyard Department of Public Safety, which bears

responsibility for law enforcement functions in the town, the Court concludes she was a member of a "law enforcement unit" as defined by § 7-294a(8) for purposes of defining a police officer under § 7-294a(9).[3]

The Court also finds that Defendant Herb performed police duties. The Connecticut statutes do not define "police duties."[4] However, the Connecticut Attorney General has. While an Attorney General opinion is not binding authority, the Connecticut Supreme Court has explained that Connecticut courts should give these opinions "careful consideration" because they are "highly persuasive." *Velez v. Comm'r of Corr.*, 250 Conn. 536, 545 (1999) (quoting *Conn. State Med. Soc'y v. Conn. Bd. of Exam'rs in Podiatry*, 208 Conn. 709, 720 (1988)). In a 1993 opinion, the Attorney General of Connecticut defined police duties as encompassing "one or more of the following activities: (1) enforcement of criminal or traffic laws, (2) preservation of public order, (3) the protection of life or property, and (4) the prevention, detection or investigation of crime." Atty. Gen. Op. 1993-028.[5] The Attorney General went on to explain that animal control officers perform police duties because "any municipal animal control officer . . . [may exercise] .

---

[3] Plaintiff also urges the Court to consider a photograph of a van displaying the words "Ledyard Police Animal Control Division" on the back, which she has attached to her opposition brief. ECF No. 25-1 at 1. On a motion to dismiss, the Court is limited to considering the complaint itself, and documents that are integral to the complaint or incorporated into it by reference. *See Chambers v. Time Warner*, 282 F.3d 147, 152–54 (2d Cir. 2002). As this photograph was not referenced in the complaint nor integral to it, the Court cannot consider the photo in deciding this motion without converting the motion into one for summary judgment, which the Court declines to do. *See id.*; *see also* Fed. R. Civ. P. 12(d).

[4] The Court recognizes that the Connecticut law governing the certification of police officers defines "police functions." Conn. Gen. Stat. § 7-294d(e) ("As used in this subsection, 'performs police functions' for a person who is not a police officer, as defined in section 7-294a, means that in the course of such person's official duties, such person carries a firearm and exercises arrest powers pursuant to section 54-1f or engages in the prevention, detection or investigation of crime, as defined in section 53a-24."). The Court does not apply this definition in this case. First, Section 7-294d as whole pertains to the powers of the Police Officer Standards and Training Council, which sets training and certification requirements for certain officers. *See id.* § 7-294d(a) ("The Police Officer Standards and Training Council shall have the following powers."). It is therefore not a general definition of police duties. Moreover, § 7-294d(f) expressly precludes the application of Section 7-294's testing and certification requirements to municipal animal control officers, so the statute seems wholly inapplicable here. While Defendant Herb contends that the exclusion of municipal animal control officers from the training and certification requirements suggests such officers are *not* police officers, she disregards the functional inquiry required by § 7-294a(9).

[5] This opinion is available at https://portal.ct.gov/ag/opinions/1993-formal-opinions/t-william-knapp-municipal-police-training-council-1993028-formal-opinion-attorney-general-of-connect (last visited March 29, 2024).

. . authority to arrest any person and may issue a written complaint and summons in furtherance thereof for any violation of any law relating to dogs or to any domestic animal . . . ." *Id.* (quoting Conn. Gen. Stat. § 22-330). The Court agrees with the Attorney General that animal control officers perform police duties because they enforce criminal laws related to dogs and domestic animals, including through powers of arrest and the ability to issue summonses. *See* Conn. Gen. Stat. § 22-330. Indeed, in this case Defendant Herb is alleged to have issued a misdemeanor summons to Plaintiff for a violation of Connecticut's dog roaming law.

Thus, Defendant Herb was a police officer for purposes of this motion to dismiss, because she performed police duties as part of a law enforcement unit. It therefore follows that she owed a duty to intervene in her fellow police officer's conduct.

*2. Section 1983 Duty to Intervene in Excessive Force*

The Court finds that Plaintiff has stated a Section 1983 duty to intervene claim against Defendant Herb for Defendant Long's alleged use of excessive force.

To state a Section 1983 claim for failure to intervene in another officer's use of excessive force, a plaintiff must allege, first, that the other officer used excessive force. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). She must further allege that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent*, 540 F. Supp. 2d at 512 (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1998)).

The Court makes two preliminary notes. First, Plaintiff's complaint does not explicitly make clear that she is pursuing an excessive force claim. While Plaintiff makes a passing reference to excessive force in the beginning of her complaint, Compl. ¶ 1, Plaintiff's first cause of action

9

under Section 1983 mentions only unspecified violations of her Fourth and Fourteenth Amendment rights, and does not specify that either Defendant violated the Fourth Amendment by virtue of their use of excessive force, *id.* ¶ 53.  However, Plaintiff does allege that Defendant Long forced her against a broken door frame, pushed her face first down her front steps, and threw Plaintiff to the ground while landing on top of her with the "full force of his body-weight."  *Id.* ¶¶ 38–40.  Reading the entirety of Plaintiff's complaint, it appears clear that Plaintiff brings an excessive force claim under the Fourth Amendment against Defendant Long, and a related failure to intervene claim against Defendant Herb in her Section 1983 cause of action.  *See Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (a claim against a police officer for using excessive force during an arrest "is most properly characterized as one invoking the protections of the Fourth Amendment").[6]

Second, Defendant Herb does not dispute that Plaintiff's allegations may amount to an excessive force claim against Defendant Long.  *See* ECF No. 23-1 at 10–12.  The Court therefore need not examine this issue in detail and assumes, for purposes of this ruling, that Plaintiff has plausibly alleged an excessive force claim under the Fourth Amendment against Defendant Long.

As for Defendant Herb's alleged failure to intervene, the Court finds that Plaintiff has alleged sufficient facts to support this claim.  First, drawing all inferences in Plaintiff's favor, the complaint plausibly alleges Defendant Herb had a realistic opportunity to intervene and prevent the harm.  While the complaint does not specify how close Herb was to Long when he pushed Plaintiff out of the house and into the front yard, it permits a plausible inference that Herb could have intervened to prevent Long from pushing Plaintiff against the broken door frame and into the

---

[6] As Plaintiff does not appear to characterize her complaint as stating a Fourth Amendment claim for an illegal search of her home on account of Defendant Long's entry, the Court does not construe the complaint as attempting to state such a claim.

10

ground. Second, a reasonable officer in Defendant Herb's position would know that slamming someone to the ground with the full force of their body weight, especially where the purpose of the visit was to deliver a misdemeanor summons and the victim was not otherwise resisting arrest, would violate a victim's constitutional rights. *See Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010) (explaining that it is clearly established that it is unconstitutional to use gratuitous force in an arrest). Finally, based on the complaint's allegations, Defendant Herb took no steps to intervene, let alone reasonable steps.

For these reasons, Plaintiff may bring a failure to intervene claim against Defendant Herb based on a claim for excessive force against Defendant Long.[7]

### C. Section 1983 and State Law Malicious Prosecution

Next, the Court holds Plaintiff may proceed with her malicious prosecution claim under both Section 1983 and state law.

"A section 1983 malicious prosecution claim requires the plaintiff to demonstrate 'a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution under state law.'" *Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 443–44 (D. Conn. 2013) (quoting *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted)). To bring a malicious prosecution claim under Connecticut law, a Plaintiff must establish "the initiation or procurement of the initiation of criminal prosecution with malice for a purpose other than bringing

---

[7] While Defendant Herb argues in passing that she cannot be liable for a failure to intervene in a false arrest because she is not a police officer, *see* ECF No. 23-1 at 12, she does not argue, in the alternative, that Plaintiff has failed to state a claim of failure to intervene in the allegedly false arrest. Plaintiff, for her part, does not clarify that she is pursuing a failure to intervene in the false arrest claim against Defendant Herb (as opposed to a failure to intervene in the alleged excessive force). Indeed, Plaintiff has alleged in her second cause of action that both Defendants are liable for false arrest directly. *See* Compl. ¶¶ 55–60. For these reasons, the Court construes the complaint as alleging against Defendant Herb only *direct* claims for false arrest under Section 1983 and state law, and not an indirect claim under Section 1983 for failure to intervene in the allegedly false arrest. Defendant Herb has not moved to dismiss the direct false arrest claims brought under Section 1983 or state law on any grounds other than what the Court has already rejected.

11

an offender to justice," "that the defendant acted without probable cause," and that "the criminal proceedings terminated in favor of the plaintiff." *Shattuck v. Stratford*, 233 F. Supp. 2d 301, 306 (D. Conn. 2002) (citing *QSP, Inc. v. Aetna Casualty and Surety Co.*, 256 Conn. 343, 361 (2001)). To establish the Fourth Amendment constitutional violation under Section 1983, the plaintiff must also show a sufficient post-arraignment deprivation of liberty consistent with the concept of a seizure. *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Shattuck*, 233 F. Supp. 2d at 307 n.10.

Defendant Herb argues in one sentence that Plaintiff has "failed to allege facts supportive of any elements of a claim for malicious prosecution directed toward ACO Herb," ECF No. 23-1 at 13, but fails to elaborate *why* the complaint fails in this regard. Because Defendant Herb has failed to provide any reasoning why she believes the complaint is deficient as to the elements of a state law claim for malicious prosecution, the Court will not entertain this argument, and Plaintiff may proceed with this claim.

Defendant Herb devotes similar short shrift to her argument that Plaintiff has failed to allege the post-arraignment deprivation of liberty required to state a Section 1983 claim for malicious prosecution. *See id.* Because this is a more specific argument, however, the Court addresses it, and rejects it. As Plaintiff points out, in *Swartz v. Insogna*, the Second Circuit found that the Circuit has "consistently held that a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment deprivation of liberty." 704 F.3d 105, 112 (2d Cir. 2013) (alterations in original) (collecting cases). By swearing out a complaint and initiating a criminal action, a defendant can "put in motion proceedings that rendered [the plaintiff] at all times subject to the orders of the court," and "foreseeably required him to incur the expense of a lawyer and the

inconvenience and perhaps expense of multiple court appearances." *Id.* Plaintiff has pleaded as much here. Defendant Herb issued a misdemeanor summons to Plaintiff under Conn. Gen. Stat. § 22-363 for a second violation of that statute. The misdemeanor summons initiated criminal proceedings; the Court can infer that, because the criminal proceedings terminated in Plaintiff's favor, she was required to attend court at least once. *See* Compl. ¶¶ 61–62. Accordingly, Defendant Herb's acts constitute a Fourth Amendment violation for malicious prosecution under Second Circuit precedent. Should discovery reveal that Plaintiff in fact was not required to appear in court and otherwise did not suffer a post-arraignment deprivation of liberty, Defendants are free to move for summary judgment on this claim.

### D. Qualified Immunity

Finally, the Court finds that Defendant Herb is not entitled to qualified immunity for the alleged constitutional violations of excessive force, false arrest, and malicious prosecution.

#### 1. Legal Standard

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The United States Supreme Court has set forth a two-pronged test governing the qualified immunity defense. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 232 (internal citations omitted).

Second, "the court must decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Thus, qualified immunity "bars a plaintiff's claim unless (1) the official violated a statutory or constitutional right, and (2) that right was clearly established at the time of the challenged conduct." *Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023). Courts have discretion to decide which of the two prongs to address first. *Nat'l Rifle Ass'n v. Vullo*, 49 F.4th 700, 714 (2d Cir. 2022).

Relevant to the second prong, "whether a right was clearly established at the pertinent time is a question of law." *Kerman v. City of New York*, 374 F.3d 93, 108 (2d Cir. 2004). An officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Although qualified immunity defenses are often decided on motions for summary judgment, "in appropriate circumstances a district court may address qualified immunity at the pleadings stage." *Vullo*, 49 F.4th at 714. When a defendant presents a qualified immunity defense on a motion to dismiss, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support [the] claim, but also those that defeat the immunity defense." *Matzell*, 64 F.4th at 434 (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). The Second Circuit has recognized that "a qualified immunity defense 'faces a formidable hurdle' at the motion to dismiss stage 'and is usually not successful.'" *Id.* (quoting *Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022)). Nonetheless, the Supreme Court has "repeatedly 'stressed the importance of

resolving immunity questions at the earliest possible stage [of the] litigation.'" *Wood v. Moss*, 572 U.S. 744, 755 n.4 (2014) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*)).

### 2. *Excessive Force*

The Court finds that, at this early stage of litigation, Defendant Herb is not entitled to qualified immunity as to Plaintiff's claim that she failed to intervene in Defendant Long's use of excessive force.

As to the first prong, the Court has already found that Plaintiff has stated a plausible claim that Defendant Herb violated the constitution by virtue of her failure to intervene in Defendant Long's use of excessive force against Plaintiff.

On the second prong, the Court finds, for purposes of a motion to dismiss, that it was clearly established that Defendant Herb owed a duty to intervene in Defendant Long's use of excessive force. To overcome the defense of qualified immunity for failure to intervene, "the failure to intercede must be under circumstances making it objectively unreasonable for [the defendant] to believe that his [or her] fellow officers' conduct did not violate those rights." *Ricciuti v. N. Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). Here, it is clearly established that an officer may not use gratuitous force during arrest. *See Tracy*, 623 F.3d at 99 n.5. Plaintiff has alleged that, in the course of requesting that she accept a misdemeanor summons for letting the family dog out when she was not even home, Defendant Long broke the door of her home, forced her out of the house, and threw her to the ground, landing on top of her with his full weight and causing significant injuries. Such use of force, if proven, would plainly appear gratuitous. Under these circumstances, it would be objectively unreasonable for Defendant Herb to believe that Officer Long's conduct did not violate the Constitution. Defendant does not dispute this analysis.

Instead, Defendant focuses her argument on the fact that neither the Second Circuit nor the Supreme Court has found that an animal control officer has a duty to intervene for a Fourth Amendment violation. Defendant cites the Eleventh Circuit's decision *Wilson v. Strong* for the proposition that, for her to owe a duty to intervene, either the Second Circuit or the Supreme must have held that "a non-law-enforcement officer, in circumstances materially similar to those here, has a duty to intervene . . . ." 156 F.3d 1131, 1135 (11th Cir. 1998); *see also* ECF No. 23-1 at 23–24 (citing *Wilson* 156 F.3d at 1135). However, as the Court has already explained, Defendant Herb is a police officer under Connecticut law. While there may not be a Second Circuit case directly on point, the Connecticut Attorney General has interpreted animal control officers as performing police duties since at least 1993. Thus, Defendant's reliance on *Wilson*—which is not binding on this Court—is unpersuasive, particularly at the motion to dismiss stage. Indeed, *Wilson* is also distinguishable because, under Florida law applicable in that case, animal control officers had no authority to conduct arrests, whereas Connecticut municipal animal control officers do. *Compare Wilson*, 156 F.3d at 1134 *with* Conn. Gen. Stat. § 22-330. Additionally, the plaintiff in *Wilson* did not plead a failure to intervene theory, while Plaintiff here has. *Wilson*, 156 F.3d at 1135. *Wilson* is therefore inapposite.

Accordingly, the Court denies Defendant Herb's motion to dismiss on the ground that she is entitled to qualified immunity for her alleged failure to intervene in Defendant Long's excessive force. This holding is without prejudice to renewal at a later stage of the case.

### 3. *False Arrest and Malicious Prosecution*

As for the remaining constitutional violations, Defendant Herb does not argue that she is entitled to qualified immunity with respect to any Section 1983 claim for false arrest. While this

is perhaps a function of the general nature of Plaintiff's complaint, Defendant Herb remains free to raise the issue of qualified immunity as to such a claim at the summary judgment stage.

Finally, the Court rejects Defendant Herb's contention that she is entitled to qualified immunity on Plaintiff's Section 1983 malicious prosecution claim, as it rests only on a ground the Court has already rejected: that Plaintiff has failed to plead a post-arraignment deprivation of liberty as a result of issuance of the misdemeanor summons.

### IV.   CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Defendant's motion to dismiss is granted as to Plaintiff's claim for negligent infliction of emotional distress, and denied in all other respects.

**SO ORDERED** at Hartford, Connecticut, this 29th day of March, 2024.

                                              */s/ Sarala V. Nagala*
                                              SARALA V. NAGALA
                                              UNITED STATES DISTRICT JUDGE