## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TAMMY HAMMOND, | ) | 3:23-cv-318 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICER KYLE LONG and ANIMAL | ) | |
| CONTROL OFFICER CARRIE HERB, | ) | |
| *Defendants*. | ) | July 10, 2025 |

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Tammy Hammond has sued Ledyard, Connecticut Police Officer Kyle Long and Ledyard Assistant Animal Control Officer ("ACO") Carrie Herb under 42 U.S.C. § 1983 for alleged violations of her constitutional rights in connection with her May 8, 2022, arrest by Officer Long. According to Plaintiff, Officer Long entered her home without a warrant and used excessive force against her during Defendants' attempt to issue a summons to Plaintiff for an animal nuisance misdemeanor, and ACO Herb failed to intervene to prevent Officer Long's alleged constitutional violations. Plaintiff also alleges claims against both Defendants for false arrest, malicious prosecution, and negligent infliction of emotional distress ("NIED").[1]

Defendants have moved for summary judgment as to Plaintiff's remaining claims in this action. Defs.' Mot. Summ. J., ECF No. 53. For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

Specifically, the Court concludes that there are genuine disputes of material fact precluding entry of summary judgment as to Plaintiff's Fourth Amendment claim against Officer Long for

---

[1] The NIED claim against ACO Herb was previously dismissed by the Court. *See Hammond v. Long*, 727 F. Supp. 3d 85, 99 (D. Conn. 2024).

warrantless entry and excessive force, though ACO Herb is entitled to qualified immunity as to her alleged failure to intervene in Officer Long's purported constitutional violations. The Court also concludes that both Defendants are entitled to qualified immunity on Plaintiff's claims for false arrest and malicious prosecution. Finally, the Court dismisses Plaintiff's Fourteenth Amendment claim against both Defendants and NIED claim against Officer Long as conceded.

## I.    BACKGROUND

### A.  Factual Background[2]

On April 16, 2022, and on April 24, 2022, ACO Herb gave Plaintiff verbal warnings regarding the Hammond family's dog, Carmel,[3] wandering onto their neighbor's property. Pl.'s L.R. 56(a)2 St. ¶¶ 4–5. Defendants contend that, in the context of the April 24 verbal warning, Plaintiff stated that if her neighbor's dog chased Plaintiff's children or wandered onto Plaintiff's property, Plaintiff would shoot that dog. *Id.* ¶ 5. Plaintiff admits that she said she would shoot the neighbor's dog with a BB gun, but claims that her comment was sarcastic, borne out of irritation at her neighbor's complaints, given that the neighbor's dog also wandered onto Plaintiff's property. *Id.*

On May 1, 2022, Plaintiff was cited for violating Conn. Gen. Stat. § 22-364(a) (1996) (amended 2023),[4] which forbids, in part, allowing a dog "to roam at large upon the land of another and not under control of the owner or keeper," and Conn. Gen. Stat. § 22-363, which provides that the first offense of someone owning or harboring a dog that is a nuisance "by reason of vicious disposition or excessive barking or other disturbance," shall be an infraction, and any subsequent

---

[2] The factual background is taken primarily from Plaintiff's Local Rule 56(a)2 Statement, ECF No. 56-1 ("Pl.'s L.R. 56(a)2 St."). The facts indicated in this ruling are undisputed, unless otherwise indicated.

[3] Plaintiff disputes that she was the sole owner of the dog, and claims that her husband, Brett Jackson, was Carmel's primary caretaker. Pl.'s L.R. 56(a)2 St. ¶¶ 3, 7–8.

[4] Where relevant, the Court relies on the version of the statutes in effect when the relevant events occurred in May of 2022.

offense shall be a class D misdemeanor.  Pl.'s L.R. 56(a)2 St. ¶ 4.  Although Defendants state that Plaintiff was issued the citation, Plaintiff contends that her husband let the dog out while she was not home, but that the ticket was nonetheless prewritten in her name.  *Id.*; *see also* Pl. Dep. Tr., ECF No. 56-5 at 4.  The ticket was delivered to Mr. Jackson.  Pl.'s L.R. 56(a)2 St. ¶ 4.

At around 2:00 p.m. on May 8, 2022, Plaintiff's neighbor informed ACO Herb that Carmel was once again roaming on the neighbor's property.  *Id.* ¶ 3.  Believing that Plaintiff had committed a second incident of animal nuisance, ACO Herb prepared a misdemeanor summons for Plaintiff and requested that a police officer accompany her to Plaintiff's residence to issue the summons. *Id.* ¶¶ 1–2, 6, 49.  According to ACO Herb, she requested to have an officer who "has more training in de-escalation and how to deal with combatative [sic] people," as she was concerned for her safety because all of her past interactions with Plaintiff were "not . . . positive."  Herb Dep. Tr., ECF No. 53-6 at 18; Pl.'s L.R. 56(a)2 St. ¶ 49.  Later that day, at around 5:00 p.m., Officer Long was dispatched to Plaintiff's home to assist ACO Herb.  Pl.'s L.R. 56(a)2 St. ¶ 1.  The Court's recitation of Plaintiff's encounter with Defendants is based on the parties' Local Rule 56 statements, as well as the Court's review of the body-worn camera footage of Officer Long, which has been manually submitted by Defendants.  *See* Bodycam Footage, ECF No. 53-4.[5]

When Defendants arrived at the front door of the house, Mr. Jackson came out of the house to speak with them.  Pl.'s L.R. 56(a)2 St. ¶ 11.  Plaintiff stuck her head out of the door to the residence, confirmed that she was Tammy Hammond, and stated that she was at work when the dog was let out of the house.  *Id.*  Upon being advised that she was being issued a misdemeanor summons, she questioned why she was being cited when she was not the person who let the dog

---

[5] The Court may accept as true facts that are supported by video footage.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

out, and then closed her front door. *Id.* ¶ 12. Officer Long informed Mr. Jackson that Plaintiff was required to sign the summons and asked him to go inside and retrieve her. *Id.* ¶ 13. Mr. Jackson then went back into the house and began to shut the door. *Id.* ¶ 14.

Officer Long followed Mr. Jackson as he went inside the house, and held the front door open. *Id.* Defendants contend that Officer Long held the door open to monitor Plaintiff, as he believed that Plaintiff may become violent and could pose an "immediate danger to human life" based on their interaction and the background information allegedly given to him. *Id.* ¶ 15. Plaintiff disputes that there was any safety reason for Officer Long to keep the door open. *Id.*

Plaintiff, who was sitting on a recliner on the far side of the room under a blanket, told Officer Long, "You do not come into my house." *Id.* ¶ 16. Officer Long advised her that she was being arrested on the summons and that she was required to sign it. *Id.* Plaintiff questioned why she was being arrested when she was not home at the time the dog was let out, and directed Officer Long to get out of her house. *Id.* ¶¶ 16–17. As Plaintiff repeatedly directed Officer Long to leave, he advised Plaintiff that she was required to sign the summons, that she should come outside to sign it, that he was just standing in the doorway and was not in her house, and that he would have to arrest her for interfering with an officer should she refuse to sign. *Id.* ¶¶ 17, 19. Plaintiff then walked past Officer Long to exit her residence; took the pen and summons from ACO Herb, who was waiting outside the house; wrote "Fuck You" on the signature line of the summons; and returned the pen and summons to ACO Herb. *Id.* ¶ 21. ACO Herb stated, "That's not a signature." *Id.* ¶ 22.

Plaintiff then went back inside her house and shut the door as Officer Long told her to "hold on." *Id.* ¶¶ 23, 25; Bodycam Footage at 4:00–4:04. Without knocking, Officer Long opened the door and Plaintiff shut the door again. Bodycam Footage at 4:03–4:06. The parties dispute

whether the door made physical contact with Officer Long when Plaintiff shut the door on him. Pl.'s L.R. 56(a)2 St. ¶¶ 25–26.  Plaintiff also claims that even if the door hit Officer Long, it was unintentional.  *Id.* ¶ 26.

Officer Long then opened the door again, and the parties disagree on whether he felt resistance when he opened the door that second time, though Plaintiff admits Officer Long used his shoulder to open the door.  *Id.* ¶ 28.  Officer Long then grabbed Plaintiff by the arm and said, "Go ahead, go ahead," as he turned her around, pushed her up against the doorframe, and tried to secure her arms behind her back.  *Id.* ¶¶ 31–32; Bodycam Footage at 4:08–4:12.  While Defendants claim that Plaintiff was resisting arrest by pulling her hands away and that Mr. Jackson witnessed Plaintiff continuing to struggle with Officer Long even after he told Plaintiff she was under arrest, Plaintiff maintains that she did not resist.  Pl.'s L.R. 56(a)2 St. ¶¶ 31–34.  Defendants additionally assert that Officer Long put Plaintiff's arms in a "bear hug type wrap-up" to prevent her from hitting him, using her arms to push off the wall, or engaging in some other kind of resistance.  *Id.* ¶ 33.[6]

Plaintiff then fell face first outside of the house; Officer Long landed on her.  *Id.* ¶ 37.  The parties dispute the cause of Plaintiff and Officer Long's fall.  Defendants allege that Plaintiff was resisting arrest and that she and Officer Long tripped as he was trying to guide her out of the house; Plaintiff contends, on the other hand, that she was not resisting, that Officer Long purposefully "threw her out of the house," and that, in the process of being thrown out of her house, she and Officer Long tripped over the doorstep.  *Id.* ¶¶ 33–34, 37–38.  Once Plaintiff was on the ground on her stomach, Officer Long secured her arms behind her back and handcuffed her.  *Id.* ¶ 40.  He then helped her get up and off the ground.  *Id.*

---

[6] At this point in the bodycam footage, the image becomes obscured temporarily.

About ten to fifteen seconds had elapsed between the time that Plaintiff shut the door on Officer Long and when she was handcuffed.  *Id.* ¶ 39.  Plaintiff claims that Officer Long used excessive force on her by "shoulder checking" the door into her face and breaking her nose, bruising her left arm when he "slam[med] her" into the doorframe, and throwing her out of her house and "slamming her into the ground."  *Id.* ¶ 41.  Ultimately, Plaintiff was not charged with assaulting a police officer, even though Officer Long contends that he and his on-duty supervisor both agreed that there was probable cause to do so.  *Id.* ¶ 42.

B.  Procedural Background

Plaintiff brought the following claims against Defendants:  (1) a Section 1983 claim for an alleged violation of her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizures; (2) a claim for false arrest; (3) a claim for malicious prosecution; and (4) a claim for NIED.  Compl., ECF No. 1 at 8–10.  The Court granted in part and denied in part ACO Herb's motion to dismiss, dismissing only the NIED claim against her.  *See Hammond*, 727 F. Supp. 3d at 99.  The Court assumes the parties' familiarity with its order on Defendants' motion to dismiss.  Accordingly, the Court discusses only the additional procedural background necessary for this ruling.

On November 1, 2024, Defendants moved for summary judgment on Plaintiff's remaining claims.  *See* ECF No. 53.  Plaintiff responded to the motion on December 6, 2024.  *See* Pl.'s Opp'n Br., ECF No. 56.  Although the District of Connecticut's Local Rules required that Defendants' reply be filed by December 20, 2024, Defendants did not file by that deadline.  Instead, Defendants waited until January 7, 2025, to request an extension to file their reply brief, which the Court denied without prejudice to resubmission due to noncompliance with Local Rule of Civil Procedure 7(b).  *See* Order, ECF No. 58 (noting tardiness of the request, Defendants' failure to

explain why the motion was not timely filed, and Defendants' failure to obtain Plaintiff's counsel's position on the extension). On January 27, 2025, Defendants finally filed their reply brief and again moved for an extension of time to file the reply and to supplement their opening brief with a new argument. *See* Defs.' Reply, ECF No. 59; Mot. Extension Time, ECF No. 60. The Court denied the motion for an extension of time to file the reply brief due to Defendants' failure to explain why they waited more than two weeks to file the renewed motion; the Court found Defendants' "boilerplate explanation" unsatisfactory "given the *five week* delay between the reply brief deadline and the time it was finally filed." Order, ECF No. 61. The Court noted it would consider only Defendants' opening brief and Plaintiff's opposition brief in deciding the motion for summary judgment. *Id.*

In the leadup to the oral argument on the motion for summary judgment, Defendants filed a motion for leave to supplement their motion for summary judgment and attached a supplemental brief, bringing to the Court's attention a recent United States Supreme Court ruling rejecting the "moment-of-threat" rule used by some courts, including the Second Circuit, to evaluate excessive force claims. Defs.' Suppl. Br., ECF No. 66-1 at 1–2 (citing *Barnes v. Felix*, 605 U.S. ---, 145 S. Ct. 1353 (2025)). Construing the supplemental brief as a sur-reply, the Court denied the motion to supplement for failure to demonstrate good cause, but agreed to consider the filing as if it were a notice of supplemental authority, and ordered Plaintiff to file a supplemental brief responding to the new legal authority identified by Defendants. *See* Order, ECF No. 67. Plaintiff timely submitted her supplemental brief. Pl.'s Suppl. Br., ECF No. 68.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of N.Y.*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Anderson*, 477 U.S. at 250–51).

## III.    OFFICER LONG'S ALLEGED WARRANTLESS ENTRIES

To begin, Plaintiff has conceded that summary judgment is appropriate on her Fourteenth Amendment unlawful entry (and excessive force) claim by failing to respond to Defendants' argument on the issue. *See* Defs.' Opening Br., ECF No. 53-1 at 16. "It is well-established that a plaintiff effectively concedes a defendant's arguments by [her] failure to respond to them." *Nance v. N.Y. Pub. Interest Rsch. Grp. Fund, Inc.*, No. 1:23-cv-3030 (MKV), 2025 WL 965883, at *6 (S.D.N.Y. Mar. 31, 2025) (citing cases); *Simons v. Yale Univ.*, 712 F. Supp. 3d 267, 277 (D. Conn. 2024) (same). Defendants are therefore entitled to summary judgment as to Plaintiff's claim that Defendants violated the Fourteenth Amendment.

As to Plaintiff's Fourth Amendment unlawful entry claim, the presence of genuine disputes of material fact precludes summary judgment with respect to Officer Long. The Court also holds that Officer Long is not entitled to qualified immunity as to this claim.

### A.  <u>Legal Standard</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Payton v. New York*, 445 U.S. 573,

589–90 (1980) (cleaned up; quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house," *id.* at 590, and it "generally requires the obtaining of a judicial warrant before a law enforcement officer can enter a home without permission." *Lange v. California*, 594 U.S. 295, 301 (2021) (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)).

Warrantless searches of a private dwelling are presumptively unreasonable, but law enforcement may enter a home without a warrant, as relevant here, when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable." *See Alexander v. City of Syracuse*, 132 F.4th 129, 147–48 (2d Cir. 2025) (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011). The exigent circumstances exception to the warrant requirement is "[i]ntended for now or never situations," such as "render[ing] emergency assistance to an injured occupant," "protect[ing] an occupant from imminent injury," or "prevent[ing] a suspect's escape when there is no time to secure a warrant." *Id.* at 147 (internal quotation marks omitted). This exception must be "jealously and carefully drawn," and requires officers to "bear a heavy burden to show that an exigency justifie[s] a warrantless entry." *Id.* (internal citations and quotation marks omitted).

Courts in the Second Circuit consider the following list of factors, which is illustrative and not exhaustive, to determine whether circumstances are "sufficiently exigent to excuse the warrantless conduct":

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*United States v. Delva*, 858 F.3d 135, 154 (2d Cir. 2017) (quoting *United States v. MacDonald*, 916 F.2d 766, 769–70 (2d Cir. 1990) (en banc)). This test is an "objective one that turns on the district court's examination of the totality of circumstances confronting law enforcement agents in the particular case." *MacDonald*, 916 F.2d at 769.

It is undisputed that Officer Long did not have a warrant to enter Plaintiff's home. Plaintiff contends that Officer Long entered her home without a warrant, in violation of the Fourth Amendment, on three separate occasions: (1) when he held the door open and stood at the doorway after Mr. Jackson went into the house to retrieve Plaintiff, "crossing the threshold of [her] home"; (2) when he opened the door after Plaintiff went inside her house after "signing" the summons; and (3) when he opened the door immediately prior to physically restraining Plaintiff and handcuffing her. *See* Pl.'s Opp'n Br. at 1–2. For the reasons that follow, Defendants' motion for summary judgment as to each of Officer Long's warrantless entries is denied.

### B. Officer Long's First Two Entries

First, Defendants fail to demonstrate they are entitled to summary judgment because Officer Long's first and second entries into Plaintiff's home were required to prevent imminent harm. Although Defendants contend these entries were necessary for officer safety, they fail to even mention the exigent circumstances test in their briefing. Nevertheless, the Court proceeds with analysis of these factors based on the facts presented by the parties.

The gravity or violent nature of the offense "weighs heavily in the determination of whether exigent circumstances exist." *See Loria v. Gorman*, 306 F.3d 1271, 1285 (2d Cir. 2002). "Indeed, the Supreme Court has noted 'that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.'" *Id.* (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984)). Here, the underlying offense

for which Plaintiff was being arrested is an animal nuisance misdemeanor—a nonviolent offense—which is classified as a class D misdemeanor and carries a maximum penalty of 30 days in jail and a fine of up to $250.  *See* Conn. Gen. Stat. §§ 53a-26(d), 53a-42.  This is arguably less severe than the offense for which the plaintiff in *Loria* was arrested—obstructing governmental administration in the second degree—which was punishable by up to one year in jail and a fine of up to $25.  *See* 306 F.3d at 1285.  Thus, the Court finds that the first factor weighs against finding the presence of exigent circumstances, as a matter of law.

Turning to the second factor, there is a genuine dispute of material fact about whether Defendants reasonably believed Plaintiff was armed and, more fundamentally, whether it was reasonable for Defendants to believe that Plaintiff posed a danger to them.  Throughout Officer Long's interaction with Plaintiff and prior to making physical contact with her, he had not seen any signs that she was armed.  Long Dep. Tr., ECF No. 56-2 at 43.  Defendants contend that they believe Plaintiff had access to a weapon because she had made a comment about shooting her neighbor's dog on a prior occasion, whereas Plaintiff claims that this was a sarcastic comment.  Defendants also argue that Plaintiff's behavior was "unpredictable and aggressive," and that behavior, in combination with her comment about shooting her neighbor's dog, caused Officer Long to perceive her to be an "immediate danger."  Defs.' Opening Br. at 10–11.  At the same time, though, they acknowledge Officer Long testified he "could not pinpoint to whom [the threat/danger] was directed to and from where."  *Id.* at 11.  Plaintiff, for her part, points to the bodycam footage as proof that she was speaking "calmly (not with an elevated voice)."  Pl.'s Opp'n Br. at 17.

Defendants' theory that Officer Long's first two entries were necessary to prevent imminent harms of violence, then, depends on how Plaintiff's earlier comment and behavior are interpreted.

Viewing the record in the light most favorable to Plaintiff, as the Court must on summary judgment, *see Kee*, 12 F.4th at 158, a reasonable factfinder could find Plaintiff's characterization of her prior comment as sarcastic and her behavior on the day of the incident as calm to be accurate. And a reasonable jury may also find, based on review of the bodycam footage, that while Plaintiff certainly seemed agitated and upset, she was not behaving in a manner that would cause a reasonable person to be concerned about their safety.

Finally, the remaining factors do not weigh in favor of finding exigent circumstances as a matter of law. The parties do not dispute that Plaintiff was in her house, but they do dispute whether Defendants had probable cause to arrest Plaintiff for the animal nuisance misdemeanor, given her protests that she was not home at the time of the incident and her insistence that she could not be considered to have committed a class D misdemeanor for a second offense when she had not yet been convicted of an infraction for the first offense.[7] *See* Pl.'s Opp'n Br. at 8–11. The Court need not decide, for purposes of assessing whether exigent circumstances justified Officer Long's first two entries, whether Defendants had probable cause to arrest Plaintiff for the misdemeanor animal nuisance offense, because even the existence of probable cause and knowledge that the suspect is on the premises "are not sufficient to justify an entry where the crime involved is minor and there is no apparent potential for violence." *Loria*, 306 F.3d at 1285–86 (citing *Welsh*, 466 U.S. at 753).

The parties also dispute whether there was any need for Officer Long to enter Plaintiff's home a second time because, according to Plaintiff, she was no longer under arrest after having

---

[7] ACO Herb testified that she understood that she may issue a misdemeanor summons for a second animal nuisance violation even if there was no conviction or guilty plea with respect to the infraction for the first violation. ECF No. 53-6 at 15. Plaintiff argues, on the other hand, that this second incident should have been charged as another infraction, rather than a misdemeanor, and points to caselaw suggesting that a defendant accused of multiple violations of the animal nuisance statute may only face the "enhanced penalties" of a class D misdemeanor after being convicted of an infraction for the first offense. Pl.'s Opp'n Br. at 9–10 (citing cases). This issue is addressed further below.

"signed" the summons. Pl.'s Opp'n Br. at 14. Moreover, Officer Long testified that Plaintiff was not a "flight risk," ECF No. 56-2 at 37–38, and in any case, "the state's interest in preventing any likelihood of escape is significantly lessened where the offense involved is minor" and not violent. *Loria*, 306 F.3d at 1286.

The only factor that possibly weighs in favor of finding exigent circumstances is that Officer Long entered the residence relatively peacefully the first two times, by opening the door. Although Plaintiff argues that Officer Long's failure to knock and announce himself automatically renders his first two entries not peaceful, the bodycam footage shows (and Plaintiff does not otherwise contest) that no physical force was used during those two entries. *See Crespo v. City of N.Y.*, No. 22-cv-2693 (BMC), --- F. Supp. 3d ---, 2025 WL 1311035, at *4 (E.D.N.Y. May 6, 2025) (finding that a non-consensual but "relatively peaceful" entry weighed in favor of finding exigent circumstances existed).

On balance, after drawing all reasonable inferences in Plaintiff's favor, there are genuine disputes of material fact as to whether exigent circumstances justified Officer Long's first and second warrantless entries into Plaintiff's home, and a reasonable jury could conclude such circumstances did not exist. Thus, the Court denies Defendants' motion for summary judgment as to these entries.

C. Officer Long's Third Entry

As to Officer Long's third entry into Plaintiff's home, the Court likewise finds that genuine issues of material fact preclude summary judgment. Defendants argue that this third entry was necessary to prevent imminent harms of violence and to pursue a felony suspect, as Plaintiff had allegedly committed a felony by slamming her front door into Officer Long's shoulder. Specifically, Defendants claim that Officer Long had probable cause to arrest Plaintiff pursuant to

Conn. Gen. Stat. § 53a-167c (2019) (amended 2023), which provides that a person is guilty of such a crime when they cause "physical injury" to a "reasonably identifiable peace officer" with the intent to prevent such officer from performing their duties and while such officer is acting in the performance of their duties. Conn. Gen. Stat. § 53a-167c(a)(1). A number of disputed material facts preclude summary judgment with respect to whether exigent circumstances justified the third warrantless entry.

Of the six factors used to assess the existence of exigent circumstances, it is undisputed that the offense of assault on a police officer is a violent one and that Plaintiff was on the premises being entered. It is unclear, however, whether there was probable cause to arrest Plaintiff for the offense, as Plaintiff appears to both admit and deny hitting Officer Long in the shoulder with her front door, *see* Pl.'s Opp'n Br. at 14 (stating that Plaintiff "inadvertently pushed the door into Officer Long's shoulder"); Pl.'s L.R. 56(a)2 St. ¶ 26 (citing to Plaintiff's deposition testimony providing: "If I hit him, like I said, it was unintentional"), and because Defendants fail to argue that Plaintiff acted with the intent of preventing Officer Long from performing his duties. *See* Defs.' Opening Br. at 10, 23–24. Still, even if it were undisputed that there was probable cause, these three factors are not enough to justify a determination that exigent circumstances existed, as a matter of law. *See Charles v. Johnson*, No. 3:13-cv-00218 (MPS), 2015 WL 4509405, at *5 (D. Conn. July 24, 2015) ("[A]lthough the crime the plaintiff was accused of committing was violent and there was probable cause to believe the plaintiff had committed the crime . . . those two factors alone are insufficient to warrant a finding of exigent circumstances."); *Welsh*, 466 U.S. at 753 ("[N]o exigency is created simply because there is probable cause to believe that a serious crime has been committed.").

That the other factors to be considered are disputed also weighs against awarding Defendants summary judgment. As explained above, there is a genuine dispute of material fact about whether Defendants reasonably believed Plaintiff was armed and whether Plaintiff's behavior could reasonably be perceived to be imminently dangerous to those around her. Additionally, while the parties agree that Officer Long "pushed the door open with his shoulder," Pl.'s L.R. 56(a)2 St. ¶ 28, they appear to disagree on how "peaceful" Officer Long's third entry was. Plaintiff contends that Officer Long opened the door so violently that he broke her nose. Pl.'s Opp'n Br. at 12; *see also* D. Jackson Dep. Tr., ECF No. 56-3 at 17 (Plaintiff's son testifying that Officer Long "opened the door and slammed it into [Plaintiff's] face"); B. Jackson Dep. Tr., ECF No. 56-6 at 12 (Plaintiff's husband testifying that Officer Long "[broke] the door into [his] wife's face"). A reasonable factfinder could find that Officer Long threw open Plaintiff's door with such force that it injured her face, which would weigh against finding exigent circumstances. *See Loria*, 306 F.3d at 1285. And although Defendants claim that Officer Long needed to enter Plaintiff's home in order to pursue a felony suspect, they offer no evidence suggesting that there was a danger that Plaintiff might escape.

Because disputed issues of material fact exist as to whether Plaintiff slammed the door into Officer Long's shoulder, whether that physical contact amounted to an assault, whether there was probable cause to arrest Plaintiff for that crime, whether Plaintiff would escape if not immediately apprehended, whether the entry was peaceful or violent, and whether there was any other immediate danger or emergency, Defendants have not met their burden of demonstrating the absence of a triable issue with respect to exigent circumstances justifying the third warrantless entry.

D. Officer Long's Qualified Immunity for Warrantless Entries

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The United States Supreme Court has set forth a two-pronged test governing the qualified immunity defense. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 232 (internal citations omitted). Second, "the court must decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Thus, qualified immunity "bars a plaintiff's claim unless (1) the official violated a statutory or constitutional right, and (2) that right was clearly established at the time of the challenged conduct." *Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023). Courts have discretion to decide which of the two prongs to address first. *Pearson*, 555 U.S. at 242.

With respect to the first prong of the qualified immunity analysis, the Court has already found that genuine disputes of material fact remain as to whether Officer Long violated Plaintiff's Fourth Amendment rights by entering her house three separate times without a warrant. The Court therefore proceeds to the second prong to determine whether the right at issue was clearly established.

"[W]hether a right was clearly established at the pertinent time is a question of law." *Kerman v. City of N.Y.*, 374 F.3d 93, 108 (2d Cir. 2004) (citations omitted).  An officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up; quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Furthermore, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 367 (2d Cir. 2021) (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004)).  In determining at summary judgment whether a police officer is entitled to qualified immunity from a Fourth Amendment claim, the Court must assess whether "under clearly established law, every reasonable officer would have concluded that the defendant's actions violated the plaintiff's Fourth Amendment rights in the particular circumstance presented by the uncontested facts and the facts presumed in the plaintiff's favor." *Cugini v. City of N.Y.*, 941 F.3d 604, 615 (2d Cir. 2019) (cleaned up).  Put differently, summary judgment for the defendant "is required where 'the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendant's conduct under the circumstances.'" *Id.* (cleaned up).

Applying those standards here, it is clear Officer Long is not entitled to qualified immunity for his warrantless entries into Plaintiff's home.  The Supreme Court and the Second Circuit have long held that "the Fourth Amendment has drawn a firm line at the entrance to the house" and that "any physical invasion of the structure of the home, by even a fraction of an inch, is too much to be tolerated." *Loria*, 306 F.3d at 1284 (cleaned up) (first quoting *Payton*, 445 U.S. at 590; and then quoting *Kyllo v. United States*, 533 U.S. 27, 37 (2001)).  In addition, "[b]reaking the threshold

18

of the doorway" triggers the warrant requirement. *United States v. Gori*, 230 F.3d 44, 52 n.3 (2d Cir. 2000) (citing *United States v. Santana*, 427 U.S. 38, 40 (1976)).

Although the Second Circuit has not yet determined whether a police officer's placement of his foot at the door to prevent it from shutting constitutes violation of a clearly established right, there is "'extensive' Supreme Court and Second Circuit precedent emphasizing that *any* physical intrusion into the home, however slight, is a search that triggers Fourth Amendment scrutiny." *Escoffier v. City of N.Y.*, No. 13-cv-3918 (JPO), 2019 WL 4747666, at *5 (S.D.N.Y. Sept. 30, 2019); *see also Bey v. Roc*, No. 19-cv-1877 (PKC) (JAM), 2025 WL 871648, at *10 (E.D.N.Y. Mar. 20, 2025), *appeal dismissed*, No. 25-756 (2d Cir. June 9, 2025). Applying this precedent, courts have found that "a police officer violated a plaintiff's clearly established Fourth Amendment rights by placing a foot in the doorway of the plaintiff's home without the plaintiff's consent." *Bey*, 2025 WL 871648, at *10 (cleaned up). Here, as in *Bey*, when Plaintiff noticed that Officer Long had prevented the door from shutting during his first entry into the home, she repeatedly directed him to leave, signaling that she did not consent to Officer Long's entry into her home.[8] *See id.* (noting that the plaintiff had repeatedly asked the officer to remove his foot from her doorway); Pl.'s Opp'n Br. at 18–19 (transcribing bodycam footage at 2:30 to 3:40); ECF No. 56-2 at 68–69 (Officer Long testifying that Plaintiff did not want him in her home). And, as to the latter two entries, when the facts are viewed in Plaintiff's favor, a reasonable jury could find that Officer Long entered Plaintiff's home, without exigent circumstances justifying the entries. *See Cugini*, 941 F.3d at 615. Any reasonable officer would have known that such actions violated Plaintiff's

---

[8] In their belated reply brief, Defendants attempted to supplement their motion for summary judgment with an argument that Mr. Jackson consented to Officer Long's "limited entry" in order to issue Plaintiff's misdemeanor summons. *See* Defs.' Reply at 8–9. This argument is doubly procedurally defaulted: it was included in the untimely reply brief, *and* it was newly raised on reply. Accordingly, the Court declines to consider the argument regarding Mr. Jackson's alleged consent.

constitutional rights, given how sacrosanct the home is treated in Fourth Amendment jurisprudence.

Having found that a reasonable jury could determine that Officer Long's warrantless entries into Plaintiff's home were not justified by exigent circumstances, the Court concludes that it cannot at this time grant qualified immunity to Officer Long, because a reasonable officer would have understood that his actions, viewed in the light most favorable to Plaintiff, would violate clearly established law.

## IV.    OFFICER LONG'S ALLEGED EXCESSIVE FORCE

With respect to Plaintiff's claim for excessive force, the Court finds that there are material, disputed facts regarding the reasonableness of Officer Long's use of force in grabbing Plaintiff by the arm, pushing her against the doorframe as he tried to secure her arms behind her back, and taking Plaintiff to the ground outside of the house.  As a result, Officer Long is not entitled to summary judgment as to this claim; nor is he entitled to qualified immunity at this juncture.

A. Legal Standard

A claim for excessive force under 42 U.S.C. § 1983 is analyzed "under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). This inquiry requires analysis of the "totality of the circumstances," which has "no time limit." *Barnes*, 145 S. Ct. at 1358 (citations omitted).  Although "the situation at the precise time of the [use of force] will often be what matters most," "[t]he history of the interaction, as well as other past circumstances known to the officer . . . may inform the reasonableness of the use of force." *Id.*

The Supreme Court has long noted that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to

effect it." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)).  Thus, while some degree of physical force may be permissible, a "[p]olice officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397).  In order to assess whether the force used was reasonable, courts apply the factors outlined by the Supreme Court in *Graham*:  (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight."  490 U.S. at 396; *see also Cugini*, 941 F.3d at 612 (same).  Further, the reasonableness of an officer's actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry*, 392 U.S. at 20–22).  As *Graham* recognizes, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* at 396–97.

B.  Discussion

For the reasons set forth above, the Court finds that there are significant factual disputes with respect to the first and second *Graham* factors.  As to the first *Graham* factor, the Court finds that the severity of the crime at issue here—an alleged assault on an officer—is disputed under the circumstances.  As described above, it is unclear whether the door made physical contact with Officer Long's shoulder when Plaintiff closed it.  Defendants contend that Plaintiff "struck [Officer Long] in the shoulder by slamming the door to her residence on him," Defs.' Opening Br. at 10, whereas Plaintiff appears to both admit and deny hitting Officer Long in the shoulder, Pl.'s Opp'n

Br. at 14; Pl.'s L.R. 56(a)2 St. ¶ 26.  In addition, although Defendants do not allege that Plaintiff

injured Officer Long when she closed her front door, Plaintiff argues that she had not injured him

based on the fact that Officer Long testified at his deposition that he was not injured.  *See* Pl.'s

Opp'n Br. at 13 (citing ECF No. 56-2 at 34–35).  The measure of force with which Plaintiff closed

the door is a triable issue of fact that cannot be determined based on the record before the Court.

With respect to the second *Graham* factor, the Court finds that there is a genuine issue of material

fact as to whether Plaintiff posed an immediate threat to the safety of Defendants and others around

her, for the reasons already articulated.  The parties dispute whether Plaintiff's earlier comment

about shooting her neighbor's dog and whether Plaintiff's interaction with Defendants on May 8,

2022, would have raised legitimate safety concerns.

The Court is also unable to resolve factual disputes regarding whether Plaintiff was actively

resisting arrest, although the Court notes that Defendants have not put forth any evidence that

Plaintiff was attempting to evade arrest by flight.  Defendants claim that Plaintiff pulled her hands

away when Officer Long first grabbed her arm to arrest her and that she continued to pull away as

Officer Long pinned her against the doorframe to gain control of her, which led him to use a "bear

hug type wrap-up" to prevent her from assaulting him or escaping.  Pl.'s L.R. 56(a)2 St. ¶ 31.

Plaintiff and her son both maintain that Plaintiff was not resisting arrest after Officer Long made

his third warrantless entry.  Plaintiff denies ever resisting by tensing her body up or by pulling her

hands away.  ECF No. 56-5 at 25.  Her son likewise avers that Plaintiff was not trying to pull back

against Officer Long and "was cooperating to the best of her ability as she was reeling from getting

struck in the face with the door."  ECF No. 56-3 at 17.  And although Mr. Jackson appears to admit

through his deposition testimony that his wife "struggle[d]" with Officer Long after he pinned her

up against the doorframe, Mr. Jackson also asserts that Plaintiff did not physically struggle with

Officer Long before she was put in handcuffs and that she simply "stood there." ECF No. 56-6 at
12.

There are also factual disputes about how Plaintiff and Officer Long exited the home.
While the parties agree that, after Officer Long pinned Plaintiff against her doorframe, Plaintiff
fell face first outside of her house and Officer Long landed on her, their accounts of the events
leading up to the fall differ significantly. Defendants describe this sequence of events as Officer
Long simply guiding Plaintiff out of the home, resulting in he and Plaintiff going "down to the
ground" when they "hit the steps." Pl.'s L.R. 56(a)2 St. ¶ 37; ECF No. 56-2 at 35. Plaintiff, her
son, and her husband paint a starkly different picture, in which Officer Long picked Plaintiff up
with her arms behind her back and threw her out of the house, causing her to land face first on the
lawn, with Officer Long falling on top of her. *See* ECF No. 56-5 at 25 (Plaintiff testifying that
Officer Long lifted her up, threw her out the door, and landed on her); ECF No. 56-3 at 10–11
(Plaintiff's son testifying that Officer Long "hoist[ed]" Plaintiff up in the air to the point where her
feet were completely off the ground and that Officer Long "jumped from inside of the house to the
ground"); ECF No. 56-6 at 12–13 (Plaintiff's husband testifying that he observed Officer Long
"wrenching both of [Plaintiff's] arms up behind her, picking her up, and slamming and landed
directly on her back . . . onto [the] grass as they tripped off [the] front porch because there's one
step down").

Moreover, the Court disagrees with Defendants that the "irrefutable video evidence" shows
that Officer Long used the minimum amount of force necessary to make this arrest. Defs.' Opening
Br. at 15–16. The video in the record only shows Officer Long opening the door and grabbing
Plaintiff by the arm, before it goes black for a few seconds—likely because the bodycam lens was
obstructed by something—and then it shows Plaintiff's back before more fully displaying Plaintiff

lying face down on the lawn. Bodycam Footage at 4:08–4:20. The critical seconds during which Officer Long used force are not depicted on the video; indeed, there is hardly any footage of Officer Long's use of force at all.

Lastly, the Court finds that a jury could conclude the physical injuries allegedly suffered by Plaintiff because of this arrest were more than *de minimis*. Plaintiff claims that, as a result of this encounter, she suffered a concussion, post-concussion syndrome that requires continuous medical treatment for migraines, a deviated septum requiring surgery, injury to her cervical spine requiring surgery, a torn rotator cuff requiring surgery, injury to her lumbar spine, lumbar radiculopathy, emotional distress, and anxiety. *See* Pl.'s Opp'n Br. at 2; *see also* ECF No. 56-6 at 14–15 (Mr. Jackson testifying that Plaintiff suffered a broken nose, ruptured disc in her neck, a torn shoulder, and spinal damage, and has daily migraines that require consistent medical treatment); ECF No. 56-5 at 9–10, 34–35 (Plaintiff describing surgeries on her neck, nose, and shoulder, as well as complications resulting from the surgeries, and claiming that her back was deemed inoperable). Although Plaintiff has not submitted medical records or evidence of any of these injuries from the incident aside from unverified interrogatory responses[9] and deposition

---

[9] In their untimely reply brief, Defendants challenged the admissibility of the unverified interrogatory responses, dated June 15, 2023, filed by Plaintiff in support of her opposition to the summary judgment motion. Defs.' Reply at 4–5; *see also* Pl.'s Interrog. Resps., ECF No. 56-4. The Court agrees with Defendants that the unverified interrogatory responses are inadmissible. "Where interrogatory responses are not verified, as required by Rule 33(b)(3) of the Federal Rules of Civil Procedure, they cannot be relied upon to oppose summary judgment." *Chen v. Shanghai Café Deluxe, Inc.*, No. 17-cv-02536 (DF), 2019 WL 1447082, at *10 (S.D.N.Y. Mar. 8, 2019); *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (holding that unverified interrogatory answers may not be considered in opposition to summary judgment motion); *Cavanagh v. Ford Motor Co.*, No. 13-cv-4584 (JS) (SIL), 2017 WL 2805057, at *7 (E.D.N.Y. June 9, 2017), *report and recommendation adopted*, 2017 WL 2804934 (E.D.N.Y. June 28, 2017). The Court put Plaintiff on notice of the admissibility issue at oral argument and gave Plaintiff the opportunity to file the certification page of her interrogatory responses. *See* Order, ECF No. 69. The Court now finds that Plaintiff failed to certify her interrogatory responses at the time they were served on Defendants. The interrogatory responses were served on June 15, 2023, *see* ECF No. 72-1 at 2, but the certification page was dated November 27, 2024, *see* ECF No. 71. Defense counsel also does not have records of ever receiving this certification page prior to Plaintiff's submission of the page on the docket on June 20, 2025. *See* ECF No. 72 at 2. As a result, because the interrogatory answers served on Defendants and later submitted by Plaintiff were not accompanied by a signed certification page, Plaintiff may not rely on these answers to oppose Defendants' motion for summary judgment.

testimony, a plaintiff's testimony alone is enough to create an issue of fact at this stage. *See Bellamy v. City of N.Y.*, 914 F.3d 727, 746 (2d Cir. 2019). Courts have found injuries less severe than those alleged by Plaintiff to be more than *de minimis*. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) (reversing district court's grant of summary judgment where plaintiff suffered "bruises lasting a couple weeks," and noting that "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe"); *Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 448 (D. Conn. 2013) (noting that, "[e]ven though the evidence of [the plaintiff's] alleged injuries" was "weak," issues of fact regarding whether the officer "used excessive force in handcuffing [the plaintiff]" precluded summary judgment); *cf. Jackson v. City of N.Y.*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013) ("Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth."). The jury is free to consider the weight (or lack thereof) of Plaintiff's evidence at trial.

Accordingly, Defendants' motion for summary judgment is denied as to the excessive force claim against Officer Long.

C.  Qualified Immunity for Excessive Force Claims

In the context of an excessive force claim, the federal right at issue is the Fourth Amendment right against unreasonable seizures, and the inquiry must focus on "the specific factual situation the officers confronted." *McKinney v. City of Middletown*, 49 F.4th 730, 739 (2d Cir. 2022) (cleaned up). A defendant will be entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case." *Kisela v. Hughes*,

584 U.S. 100, 104 (2018) (citation omitted).  Notably, there is Second Circuit precedent that it is "clearly established that an officer's significant use of force against an arrestee who was no longer resisting and who posed no threat to the safety of officers or others—whether such force was by pepper spray, taser, or any other similar use of significant force—violates the Fourth Amendment." *Jones v. Treubig*, 963 F.3d 214, 226 (2d Cir. 2020).  A qualified immunity defense against an excessive force claim is appropriate only if "(1) the officers' actions did not violate clearly established law, or (2) it was objectively reasonable for the officers to believe that their actions did not violate such law."  *Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2000).

Given the material factual disputes identified above concerning whether Plaintiff assaulted Officer Long, the degree of force used to arrest Plaintiff, and whether Plaintiff resisted arrest, Officer Long is not entitled to qualified immunity at this stage.  The Court cannot say as a matter of law that it was objectively reasonable for Officer Long to believe that his actions were lawful at the time of the arrest.  *See id.* (holding that genuine issues of material fact as to the objective reasonableness of the officer's use of force to make an investigatory stop precluded summary judgment on the basis of qualified immunity).  Thus, qualified immunity for Plaintiff's excessive force claim is denied at this time.  *See Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1993) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness."); *O'Brien v. Barrows*, 556 F. App'x 2, 4 (2d Cir. 2014) (summary order) ("In the excessive force context, summary judgment should not be granted on the basis of a qualified immunity defense premised on an assertion of objective reasonableness unless the defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." (cleaned up)); *McLaurin v. Falcone*, No. 04-

4849-CV, 2007 WL 247728, at *1 (2d Cir. Jan. 25, 2007) (summary order) ("Because there are disputes of fact here as to whether McLaurin resisted arrest and whether the level of force used by the officers was necessary and reasonable, the District Court's grant of qualified immunity was premature."); *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 250–51 (E.D.N.Y. 2014) (finding that factual disputes precluded grant of qualified immunity on excessive force claim).

## V.    ACO HERB'S ALLEGED FAILURE TO INTERVENE

The Court holds that ACO Herb is entitled to qualified immunity for failing to intervene in Officer Long's alleged Fourth Amendment violations.

Officers "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citing cases). To state a Section 1983 claim for failure to intervene in another officer's constitutional violations, a plaintiff must allege that (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene. *Jackson*, 939 F. Supp. 2d at 231–32; *see also O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1998).

In its decision on ACO Herb's motion to dismiss, the Court found that ACO Herb performed police duties as part of a law enforcement unit and thus owed a duty to intervene in other officers' constitutional violations. *See Hammond*, 727 F. Supp. 3d at 94. Because that ruling was a decision of first impression, however, the Court now grants ACO Herb qualified immunity as to Plaintiff's failure to intervene claim against her. The Court is not aware of any other case holding that an animal control officer performs police duties and owes a duty to intervene in a fellow officer's constitutional violations. No "existing precedent placed the conclusion that [ACO

Herb] acted unreasonably in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 577 U.S. 7, 14 (2015) (quoting *al-Kidd*, 563 U.S. at 741); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 207 (2d Cir. 1995) (holding that defendants were entitled to qualified immunity because each claim raised a novel issue, and it followed that "the 'contours' of the right alleged to have been violated were not 'sufficiently clear that a reasonable official would understand that what he was doing violates that right'" (quoting *Creighton*, 483 U.S. at 640)).  Thus, it was not clearly established at the time of the incident that an animal control officer like ACO Herb owed a duty to intervene in Officer Long's alleged Fourth Amendment violations.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's Section 1983 claim against ACO Herb for failure to intervene in Officer Long's alleged Fourth Amendment violations is granted on the basis of qualified immunity.

**VI.    FALSE ARREST**

Next, the Court concludes that both Defendants are entitled to qualified immunity as to Plaintiff's false arrest claim.

A.    Legal Standard

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citations omitted).  In order to prevail on her false arrest claim under Connecticut law, Plaintiff must show that "(1) the defendant intentionally arrested [her] or had [her] arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." *Edelman v. Page*, No. 3:00-cv-01166 (JAM), 2015 WL 1395893, at *11 (D. Conn. Mar. 25, 2015) (quoting

*Sharnick*, 935 F. Supp. 2d at 443); *see also Nodoushani v. S. Conn. State Univ.*, 152 Conn. App. 84, 92–93 (2014).[10]

A false arrest claim must fail "if there was probable cause to arrest the plaintiff for *any* offense." *Warner v. Freeman*, No. 3:14-cv-1192 (DFM), 2016 WL 5348569, at *3 (D. Conn. Sept. 23, 2016) (emphasis added) (citing *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006)).  Otherwise stated, "an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked at the time of the arrest, or the particular offense with which plaintiff was charged."  *Id.*  Rather, if the officer has probable cause to arrest the plaintiff for *any* offense, the plaintiff cannot succeed on a false arrest claim.  *See id.*; *see also Jaegly*, 439 F.3d at 154 ("[W]hen faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge.").

In making the probable cause determination, courts have held that "a police officer has probable cause to arrest someone if he or she has knowledge or reasonably trustworthy information that would suffice to warrant a person of reasonable caution in the belief that the person to be arrested has committed a crime."  *Coderre v. City of Wallingford*, No. 3:08-cv-00959 (JAM), 2015 WL 4774391, at *3 (D. Conn. Aug. 13, 2015) (citing *Zalaski v. City of Hartford*, 723 F.3d 382, 389–90 (2d Cir. 2013)).  The probable cause standard is "not particularly demanding."  *Id.*  It requires only "facts sufficient to establish the sort of fair probability [that a crime has been committed or is being committed] on which reasonable and prudent [people,] not legal technicians, act."  *Zalaski*, 723 F.3d at 390 (internal quotation marks and citation omitted).  "The court must

---

[10] In addition, "the Second Circuit has held that favorable termination [of the underlying criminal proceedings] is an element of false arrest under Connecticut law," though the Connecticut Supreme Court has not addressed this question. *Ruttkamp v. De Los Reyes*, No. 3:10-cv-392 (SRU), 2012 WL 3596064, at *12 (D. Conn. Aug. 20, 2012) (citing *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011)).  As Plaintiff's false arrest claim fails for other reasons, the Court need not take up the question of whether favorable termination is an element of a false arrest claim under Connecticut state law.

look to the 'totality of circumstances' to determine whether an arresting officer had probable cause to effect the arrest and must use an objective standard in making this assessment." *Torlai v. LaChance*, No. 3:14-cv-185 (JCH), 2015 WL 9047785, at *3 (D. Conn. Dec. 15, 2015) (first citing *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002); and then citing *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007)).

In the false arrest and malicious prosecution context, "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d. Cir. 1991)). Therefore, "in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." *Caldarola*, 298 F.3d at 162. As in other contexts, the ultimate question is the officer's "'objective reasonableness' in their chosen course of action given the circumstances confronting them at the scene." *Guerrero v. Scarazzini*, 274 F. App'x 11, 13 (2d Cir. 2008) (summary order) (quoting *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995)). In the end, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

B.  Discussion

The Court holds that Defendants are entitled to qualified immunity as to Plaintiff's false arrest claim.

The Court understands the parties' disputes to be centered on whether Officer Long had probable cause to arrest Plaintiff for several criminal offenses, and whether ACO Herb had probable cause to issue the animal nuisance misdemeanor summons to Plaintiff. Specifically, Defendants argue that Officer Long had probable cause to arrest Plaintiff for interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a (2019) (amended 2022); assault on an officer in violation of Conn. Gen. Stat. § 53a-167c; and breach of peace in the second degree in violation of Conn. Gen. Stat. § 53a-181. Defs.' Opening Br. at 19–21. As to ACO Herb, Defendants argue that she had probable cause to arrest Plaintiff for animal nuisance in violation of Conn. Gen. Stat. § 22-363, and permitting a dog to roam at large in violation of Conn. Gen. Stat. § 22-364(a) *Id.* at 24–25.

Beginning with Officer Long, there was at least arguable probable cause for him to charge Plaintiff with interfering with an officer, so he is entitled to qualified immunity as to Plaintiff's false arrest claim. Connecticut's statute criminalizing interference with an officer provides that "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." Conn. Gen. Stat. § 53a-167a(a). The Connecticut Supreme Court has interpreted the statute "to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace"—in other words, "core criminal conduct that is not constitutionally protected." *State v. Williams*, 205 Conn. 456, 473–74 (1987). In addition, "Connecticut courts most frequently find illegal interference with a police officer where the officer makes a direct request, which the defendant refuses to comply with, and it is that *refusal* that hinders or impedes the course of the investigation of the defendant or the performance of the officer's duties." *Acevedo v. Sklarz*, 553 F. Supp. 2d 164, 168 (D. Conn. 2008).

Here, it is undisputed that although it took several requests for Plaintiff to come out of her house to sign the summons, she eventually complied.  Pl.'s L.R. 56(a)2 St. ¶¶ 16, 17, 19, 21.  But it is also undisputed that Plaintiff walked past Officer Long and shut her front door after "signing" the summons, despite Officer Long's verbal direction to "hold on."  Bodycam Footage at 4:00–4:04.  Although it is not clear that Officer Long knew precisely what Plaintiff had written on the signature line of the summons, the video captures ACO Herb saying "that's not a signature," as Plaintiff walks away, prompting Officer Long to say "hold on."  *Id.* at 3:59–4:03.  When Plaintiff retreated into her house and attempted to shut the door on Officer Long, she ignored his verbal commands to "hold on."  At that point, there was at least *arguable* probable cause that Plaintiff had committed the offense of interfering with an officer in the performance of his duties—*i.e.*, obtaining a properly signed summons.  And the Court notes that Plaintiff has failed to respond to Defendants' argument regarding Officer Long's entitlement to qualified immunity for the false arrest claim.  For these reasons, Officer Long is entitled to qualified immunity as to Plaintiff's false arrest claim, and the Court need not reach the question of whether Officer Long had probable cause to arrest Plaintiff on other charges.  *See Jaegly*, 439 F.3d at 154.

With respect to ACO Herb's issuance of the animal nuisance misdemeanor summons, the parties dispute whether there was probable cause to charge Plaintiff with the misdemeanor for the second incident of allowing Carmel out, as noted above.  As explained below, Plaintiff may very well be correct on this point.  But the Court holds that ACO Herb is nevertheless entitled to qualified immunity, which is intended to shield officials from liability regardless of whether the official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Pearson*, 555 U.S. at 231.

First, Plaintiff is correct that *State v. Mitchell*, No. T19RCI016540392S, 2002 WL 2031111 (Conn. Super. Ct. Jan. 4, 2002), appears to suggest that a subsequent offense under Connecticut's animal nuisance statute is not, in fact, a separate crime punishable as a misdemeanor but, rather, a sentencing enhancement providing for a stricter penalty on the underlying infraction offense. *See id.* at *4 ("The second part of the information [charging the defendant with a subsequent offense under Section 22-363] here did not charge the defendant with a different crime but only that he was a subsequent offender.").[11]  A misdemeanor summons is issued after an arrest. *See* Conn. Gen. Stat. § 54-1h ("Any person who has been arrested with or without a warrant for commission of a misdemeanor . . . may, in the discretion of the arresting officer, be issued a written complaint and summons and be released on his written promise to appear on a date and time specified.").  But, as Plaintiff points out, a "summons for the commission of an infraction . . . shall not be deemed to be an arrest and the commission of an infraction or of any such violation shall not be deemed to be an offense within the meaning of section 53a-24."  Conn. Gen. Stat. § 51-164n(e).  Read together, these authorities suggest ACO Herb could not lawfully issue a misdemeanor summons to Plaintiff—after having arrested her—for the subsequent animal nuisance incident, as that incident may have been punishable only as an infraction, for which no arrest is authorized under Connecticut law.

Nonetheless, ACO Herb is entitled to qualified immunity.  The Court first notes that *Mitchell* is a decision of the Connecticut Superior Court, and the Court has not located any U.S.

---

[11] *Mitchell* addressed an earlier version of § 22-363, which provided:  "No person shall own or harbor a dog or dogs which is or are a nuisance by reason of vicious disposition or excessive barking or other disturbance, or, by such barking or other disturbance, is or are a source of annoyance to any sick person residing in the immediate vicinity. Violation of any provision of this section shall be an infraction for the first offense and such person shall be fined not more than one hundred dollars *or imprisoned not more than thirty days or both for each subsequent offense* and the court or judge may make such order concerning the restraint or disposal of such dog or dogs as may be deemed necessary."  Conn. Gen. Stat. § 22-363 (1976) (amended 2012) (emphasis added).  The italicized language appears to be the only difference between the version of the statute addressed in *Mitchell* and the current version applicable here.

Supreme Court, Second Circuit, or Connecticut appellate court precedent affirming *Mitchell*'s interpretation of the animal nuisance statute. Additionally, ACO Herb testified that it was her understanding she could issue a misdemeanor summons for the second incident, even if the initial infraction had not been resolved. *See* ECF No. 53-6 at 15. This may have been a mistake of law on ACO Herb's part, for the reasons explained above. *See Pearson*, 555 U.S. at 231. But in the absence of controlling authority from a Connecticut appellate court, the Supreme Court, or the Second Circuit holding otherwise, it was objectively reasonable for ACO Herb to believe that an arrest and issuance of a misdemeanor summons for the second incident was lawful. Indeed, "[i]n determining whether an officer is entitled to qualified immunity, '[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct.'" *Amore v. Novarro*, 624 F.3d 522, 533–34 (2d Cir. 2010) (second alteration in original) (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)) (finding officer was entitled to qualified immunity even though the statute with which he charged the plaintiff had been overruled by the state's highest court several years earlier, because the officer reasonably believed it was still valid, under the circumstances); *see also Bangs v. Smith*, 84 F.4th 87, 96 (2d Cir. 2023) ("This does not mean that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" (quoting *Creighton*, 483 U.S. at 640)).

Under these circumstances, where the only available on-point authority emanates from a state trial court, it is not clear that a reasonable person in ACO Herb's position should have known that arresting Plaintiff under § 22-363, by treating the second incident as a misdemeanor, could be

an unconstitutional false arrest.[12]  And qualified immunity is designed to protect "all but the plainly incompetent or those who knowingly violate the law."  *al-Kidd*, 563 U.S. at 743.  On the record before the Court, it cannot find that ACO Herb falls into either category.

For the reasons described above, both Officer Long and ACO Herb are entitled to qualified immunity on Plaintiff's false arrest claim.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's false arrest claim is granted.

## VII.    MALICIOUS PROSECUTION

Likewise, Officer Long and ACO Herb are entitled to qualified immunity as to Plaintiff's malicious prosecution claim.

### A.  Legal Standard

In order to prevail on her claim for malicious prosecution, Plaintiff "must show a violation of [her] rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted).  First, "[t]o show a violation of [her] Fourth Amendment rights, a Section 1983 plaintiff asserting a malicious prosecution claim 'must . . . show some deprivation of liberty consistent with the concept of 'seizure.'" *Plude v. Adams*, No. 3:12-cv-69 (AWT), 2013 WL 943730, at *1 (D. Conn. Mar. 11, 2013) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)).  Second, to establish the elements of a malicious prosecution claim under Connecticut law, the plaintiff must demonstrate "(1) the defendant initiated or procured the institution of criminal

---

[12] The Court notes that the animal roaming statute, Conn. Gen. Stat. § 22-364(a), explicitly provides that a violation "shall be an infraction" and does not include a more severe penalty for a subsequent incident.  The misdemeanor summons that ACO Herb issued charged Plaintiff with a violation of § 22-364(a), in addition to a violation of § 22-363. *See* Summons, ECF No. 53-4 at 5.  Although Plaintiff mentions, almost in passing, that there are material factual disputes as to probable cause to issue the misdemeanor summons for violations of *both* the roaming statute and the nuisance statute, *see* Pl.'s Opp'n Br. at 35, Plaintiff confines her actual analysis to issuance of the summons for a violation of § 22-363 only, *see id.* at 10–11.  Thus, the Court does not reach the question of whether the summons was properly issued for a violation of § 22-364(a).

proceedings against the plaintiff; (2) the criminal proceedings must have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Torlai*, 2015 WL 9047785, at *5 (quoting *Brooks v. Sweeney*, 299 Conn. 196, 210–11 (2010)). "[M]alice can be inferred from a want of probable cause." *Brown v. Aybar*, 451 F. Supp. 2d 374, 384 (D. Conn. 2006) (citing *Vandersluis v. Weil*, 176 Conn. 353, 356 (1978)).

Relevant here, "[t]he probable cause inquiry in the context of a malicious prosecution claim is distinct from the probable cause inquiry relevant to an assessment of a false arrest claim." *Torlai*, 2015 WL 9047785, at *6. Specifically, "probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor." *Id.* (quoting *D'Angelo v. Kirschner*, 288 F. App'x 724, 726–27 (2d Cir. 2008) (summary order)).

As with a false arrest claim, however, "in the malicious prosecution context, a defendant is entitled to qualified immunity if the defendant had 'arguable probable cause to charge' the plaintiff." *See Caraballo v. City of N.Y.*, 726 F. Supp. 3d 140, 160 (E.D.N.Y. 2024) (quoting *Richardson v. McMahon*, No. 22-582, 2023 WL 3102910, at *2 (2d Cir. Apr. 27, 2023) (summary order)). Arguable probable cause to charge "exists where, accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for [the defendant officer] to charge [the plaintiff]' with the crime in question." *Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order) (alterations in original) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996)).

B.  <u>Discussion</u>

As an initial matter, it is not entirely clear from the record before the Court the crime(s) with which Plaintiff was ultimately charged.  Neither Defendants nor Plaintiff have included any facts about the charges that were initiated—or their ultimate resolution—in their Local Rule 56 statements.  From the copy of the misdemeanor summons in the record and Officer Long's deposition transcript, the Court gleans that Plaintiff was charged with the animal nuisance misdemeanor, roaming violation, and interfering with an officer.  *See* ECF No. 53-4 at 5; ECF No. 56-2 at 51–52 (Officer Long:  "I just remember speaking with the on duty supervisor advising him of the situation.  And just basically saying that we could charge her with not only interfering and resisting, but also assault on a police officer.  And I refused to go the assault on a police officer charge, *and felt that resisting was sufficient enough for the actions of Ms. Hammond*." (emphasis added)).  The Court therefore proceeds to analyze whether the animal control violations and interfering with an officer charge were maliciously prosecuted by Defendants.

As to these charges, Defendants do not appear to dispute that Plaintiff could establish that she was seized, that criminal proceedings were initiated against her, and that the criminal proceedings terminated in Plaintiff's favor.  The Court thus treats these elements as conceded by Defendants, for purposes of the present motion.  The two elements that remain are whether Defendants had probable cause to arrest Plaintiff for the interfering charge and animal control violations, and whether they acted with malice.

First, as described above, Officer Long had at least arguable probable cause to initiate a charge against Plaintiff for interfering with an officer, when she disregarded his command to "hold on" after she "signed" the summons, reentered her home, and closed the door.  It was not manifestly unreasonable for Officer Long to charge Plaintiff with interfering with an officer on these facts.

Thus, Officer Long is entitled to qualified immunity on Plaintiff's malicious prosecution claim, and the Court need not reach the question of whether Officer Long acted with malice.

ACO Herb, too, is entitled to qualified immunity on the malicious prosecution claim. As to the animal nuisance charge, she is entitled to qualified immunity for the same reasons she is entitled to qualified immunity on the false arrest claim. Specifically, it is not clear ACO Herb should have known that issuing a misdemeanor summons for a subsequent incident could be unlawful. Thus, her possible mistake of law is protected by qualified immunity.

And as to the dog roaming violation, ACO Herb had at least arguable probable cause to charge Plaintiff. The dog roaming statute provides, in relevant part: "No owner or keeper of any dog shall allow such dog to roam at large upon the land of another and not under control of the owner or keeper or the agent of the owner or keeper." Conn. Gen. Stat. § 22-364(a). Here, Plaintiff admits the dog was "owned by Ms. Hammond's family." Pl.'s L.R. 56(a)2 St. ¶ 3. Thus, Plaintiff, as an adult in the family, is appropriately considered an "owner" of the dog, for purposes of the statute. The roaming statute makes an owner liable even when the owner's *agent* allows the dog to roam. *See* Conn. Gen. Stat. § 22-364(a). Thus, it contemplates that an owner may be liable even if she herself did not personally allow the dog to roam. Here, Plaintiff could be held responsible for her husband's actions of allowing the dog to roam, as he could plausibly be considered an agent of Plaintiff (an owner). Under this logic, ACO Herb had at least arguable probable cause to issue the dog roaming violation to Plaintiff, despite that Mr. Jackson let the dog out. That Mr. Jackson may also be an owner of the dog himself does not defeat ACO Herb's arguable probable cause for issuing the citation to Plaintiff. Under the language of the statute, the Court cannot find it was manifestly unreasonable for ACO Herb to charge Plaintiff with the roaming violation under these circumstances. ACO Herb is thus entitled to qualified immunity on

Plaintiff's malicious prosecution claim, and the Court need not consider whether ACO Herb acted with malice.

## VIII.    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Finally, the Court concludes that Plaintiff has conceded that summary judgment is appropriate on her NIED claim against Officer Long by failing to respond to Defendants' argument on the issue.  *See* Defs.' Opening Br. at 35–39.  Because "[i]t is well-established that a plaintiff effectively concedes a defendant's arguments by [her] failure to respond to them," Defendants are entitled to summary judgment as to Plaintiff's NIED claim.  *Nance*, 2025 WL 965883, at *6.

## IX.    CONCLUSION

For the reasons described herein, Defendants' motion for summary judgment, ECF No. 53, is GRANTED in part and DENIED in part.  Defendants' motion for summary judgment is granted as to Plaintiff's Fourteenth Amendment, false arrest, and malicious prosecution claims against both Defendants; her failure to intervene claim against ACO Herb; and her claim for negligent infliction of emotional distress against Officer Long.  The motion is denied as to Plaintiff's Fourth Amendment claim for unlawful entry and excessive force against Officer Long.  As all claims against ACO Herb have been dismissed, the Clerk is directed to terminate ACO Herb from the action.

The Court will convene a status conference to set a date for trial and deadlines for pretrial submissions.

**SO ORDERED** at Hartford, Connecticut, this 10th day of July, 2025.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE